UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| PATRICK AND FRANCIS HARLE, | ) | Case No.  6:09-bk-03400-KSJ |
| | ) | Chapter 7 |
| Debtors. | ) | |
| | ) | |

MEMORANDUM OPINION
PARTIALLY SUSTAINING AND PARTIALLY OVERRULING CREDITORS'
OBJECTION TO DEBTORS' CLAIM OF EXEMPTIONS

For years, one of the debtors, Frances Harle, and her siblings, Christopher Bavaro, Frank Bavaro, Jr., and Sunday Stefaniw (the "Siblings"), have disputed how Mrs. Harle handled the monies and the estate of their father, Frank J. Bavaro, Sr.  The Siblings now object to the debtors' attempt to exempt their home from creditor claims raising two arguments[1] (Doc. No. 17).   First, the Siblings argue that the debtors did not live in the home on the day they filed this bankruptcy case, March 19, 2009, and, therefore, are not entitled to the homestead exemption.  Second, the Siblings argue that, even if the debtors did live in the home on the petition date, the judgment lien they recorded against the alleged homestead property was effective and enforceable prior to the date that the debtors established any entitlement to homestead protection. The debtors claim their home as exempt pursuant to Article X, Section 4(a)(1)[2] of the Florida Constitution and Florida Statute Sections 222.01, .02, and .05. (Doc. No. 12, Schedule C) and vociferously oppose the objection (Doc. No. 22).  As explained in this Memorandum Opinion, the Court will partially sustain and partially deny the Siblings' objection, finding that the debtors *did* live in the home on the petition

---

[1] The Siblings also have filed an adversary proceeding seeking to except their judgment debt from discharge pursuant to Bankruptcy Code Sections 523(a)(2) (false pretenses, false representation, actual fraud), (a)(4) (fraud as fiduciary, embezzlement, larceny), and recently also (a)(6) (willful and malicious injury) (Adv. Pro. No. 09-771, Doc. No. 18, Amended Complaint).

[2] Article X, Section 4 of the Florida Constitution provides that a homestead "shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty. . . [.] West's F.S.A. Const. Art. 10 § 4.

date but that, as to the Siblings, their judgment was recorded and effective prior to the date the debtors established homestead protection.

In 2001 or 2002, Mrs. Harle individually purchased a mobile home located at 800 Dog Leg Trail, Osteen, Florida (the "Dog Leg Property"). At the time, she also individually owned another property, located at 820 Adler Drive, Deltona, Florida (the "Adler Property"). At some point, Mr. Harle was added as an owner of both properties. The debtors initially lived in the Adler Property for several years, always intending to move into the Dog Leg Property at some future date.

During the time she lived in the Adler Property, Mrs. Harle cared for her father and managed his financial affairs. She also was the personal representative of his estate after his death. The Siblings, believing Mrs. Harle mismanaged their father's funds and his estate, sued her and, on March 23, 2007, succeeded in obtaining a judgment[3] against Mrs. Harle individually[4] in the approximate amount of $197,000. The Florida state court found that prior to Mr. Bavaro's death, Mrs. Harle "took care of Mr. Bavaro, with his consent, exercising control over his assets and signing most of his checks" (Plaintiff's Exh. No. 12, p. 2, ¶ 5), and "took advantage of [her father's] condition, and his reliance on her for assistance, to manipulate the titles of his bank accounts. Her name on the decedent's accounts was a matter of convenience, to enable her to effectively care for the decedent and pay household bills. While [Mrs. Harle's father] did many things for [Mrs. Harle] during his life, he did not make a gift of these accounts to [Mrs. Harle]." (Plaintiff's Exh. No. 12, p. 2, ¶ 7). The state court also found that Mrs. Harle improperly converted some of her father's accounts to her own name and used the funds in the accounts for her own purposes. Although the state court questioned the propriety of Mrs. Harle's disposition of these funds, the evidence presented was insufficient for it to find that Mrs. Harle breached her fiduciary duty as a personal representative in this regard. (Plaintiff's Exh. No. 12, p. 1, ¶ 4).

---

[3] The judgment was rendered by the Circuit Court for the Seventh Judicial Circuit in and for Volusia County, Florida, in Case No. 2001-10927-PRDL (Plaintiff's Exh. No. 12).

[4] Mr. Harle was not a defendant in the state court litigation and is not a judgment debtor.

On March 23, 2007, the Siblings promptly recorded the judgment in the records of the Volusia County Clerk of Court (Plaintiff's Exh. No. 12).[5] On November 9, 2007, the Siblings filed a notice of *lis pendens* (Plaintiff's Exh. No. 5) and four days later, on November 13, 2007, they filed their judgment against Mrs. Harle with the Florida Secretary of State (Plaintiff's Exh. No. 4). During all of this time, the debtors undisputedly lived in the Adler Property, not the Dog Leg Property.

Eventually, Mr. and Mrs. Harle moved, bit by bit over a period of time, out of the Adler Property and into the Dog Leg Property intending to make it their permanent residence. Mr. Harle moved to the Dog Leg Property and vacated the Adler Property in approximately July 2008. Due in part to medical issues, Mrs. Harle moved into the Dog Leg Property somewhat later, in December 2008.[6]

As to the first issue of whether the debtors are entitled to claim the Dog Leg Property as their exempt homestead on the date they filed this bankruptcy case,[7] the Court finds that the debtors formally had established the Dog Leg Property as their residence by December 2008. In Florida, "[t]he homestead character of a property 'depends upon an actual intention to reside thereon as a

---

[5] "In Florida, a judgment becomes a lien on real estate in a county when a certified copy of the judgment is recorded in the official records of the county." In re Whelan, 325 B.R. 462, 463 (Bankr.M.D.Fla.2005) (citing Fla. Stat. § 5.10). The debtors do not dispute that the Siblings' judgment was properly recorded.

[6] In February, 2009, Mr. and Mrs. Harle applied for a homestead exemption on the Dog Leg property in the Revenue Division of Volusia County (Plaintiff's Exh. No. 17).

[7] A debtor's entitlement to claims of exemption is determined on the petition date. In re Allen, 217 B.R. 945, 951 (Bankr.M.D.Fla.1998) ("The Supreme Court of the United States has instructed that the time for deciding a debtor's entitlement to an exemption for § 522(f) purposes is at the time of the filing of the petition in bankruptcy and not at the time the lien attaches.") (citing Owen v. Owen, 500 U.S. 305, 314 n. 6, (1991) (citing 11 U.S.C. § 522(f), (b)(2)(A))); In re Wilbur, 217 B.R. 314, 317 (Bkrtcy.M.D.Fla.1998); In re Clark, 217 B.R. 943 (Bankr.M.D.Fla.1998); Gibson Group, Ltd. of Pinellas County, Inc. v. Cooper (In re Cooper), 197 B.R. 698 (M.D.Fla.1996), aff'g In re Cooper, 202 B.R. 319 (Bankr.M.D.Fla.1995); In re Gaudreault, 315 B.R. 1, 5 (Bankr. D. Mass. 2004) (debtor entitled to exemptions which exist as of the petition date); In re Casserino, 290 B.R. 735, 738 (B.A.P. 9th Cir. 2003) (petition date is relevant date for determining exemptions); Little v. Reaves (In re Reaves), 285 F.3d 1152, 1156 (9th Cir.2002) (same); Mueller v. Buckley (In re Buckley), 215 B.R. 1018, 1022, 1023 n.6 (8th Cir. BAP 1998) ("a debtor's right to an exemption is fixed as of the date of his or her filing in bankruptcy" noting that "Section 522(b)(2)(A) provides, in pertinent part, that, "an individual debtor may exempt from property of the estate .... any property ... exempt under Federal law, ... or State or local law that is applicable on the date of the filing of the petition [in bankruptcy]....").

permanent place of residence, coupled with the fact of residence.'" In re Bennett, 395 B.R. 781, 789 (Bankr.M.D.Fla.2008) (quoting Hillsborough Investment Co. v. Wilcox, 152 Fla. 889, 13 So.2d 448, 452 (1943). Thus, homeowners seeking to qualify for the homestead exemption must meet *both* an objective and subjective test. First, they must actually use and occupy the home. Second, they must express an actual intent to live permanently in the home. In re Franzese, 383 B.R. 197, 203 (Bkrtcy.M.D.Fla.2008) (citing In re Brown, 165 B.R. 512, 514 (Bankr.M.D.Fla.1994) (holding homestead established by actual use and occupancy coupled with an actual intent to live permanently in a house).

A claim of homestead exemption in Florida is "liberally construed in the interest of protecting the family home," In re Minton, 402 B.R. 380, 382-383 (Bankr.M.D.Fla.2008) (quoting Quigley v. Kennedy & Ely Ins., Inc., 207 So.2d 431, 432 (Fla. 1968), and is presumptively valid. Minton, 402 B.R. 380, 382-383 (Bankr.M.D.Fla.2008) (citing In re Colwell, 196 F.3d 1225, 1226 (11th Cir. 1999). The party challenging a homestead exemption, in this case, the Siblings, must "make a strong showing" that a debtor is not entitled to the claimed exemption. In re Franzese, 383 B.R. 197, 203 (Bankr.M.D.Fla.2008).

The Siblings argue that the debtors were still living in the Adler Property in April 2009. They point to the fact that, after December 2008, either or both Mr. and Mrs. Harle slept over at the Adler Property a few more times. They also note that some of their furniture remained at the Adler Property for a period of time after they relocated to the Dog Leg Property. The Court acknowledges that leaving furniture at a property does constitute some indicia of intent to return to that property. See Monson v. First Nat. Bank of Bradenton (In re Monson), 497 F.2d 135, 138-39 (5th Cir.1974). The evidence did establish that the debtors kept a number of storage pods with their personal belongings at the Adler Property after December 2008, and that they did occasionally spend the night at their former home.

The debtors' explanation was credible. The Dog Leg Property, a mobile home, was occupied by several family members in addition to the debtors. Space was at a premium. They simply could not fit all of their personal belongings into the home. So, they kept them in storage pods at their former house for a few months. As they were cleaning out the Adler Property and moving their possessions into these storage pods, they occasionally would spend the night rather than drive to the Dog Leg Property. The Court specifically finds that the debtors actually resided in the Dog Leg Property and had the requisite objective and subjective intent to make the Dog Leg Property their residence as of December 31, 2008. They are entitled to claim that home as their homestead for exemption purposes as of that date pursuant to Article X, Section 4 of the Florida Constitution.[8] The Court overrules the Siblings objection on that point.

Second, the Siblings assert that, even if the debtors can claim the Dog Leg Property as their homestead, their judgment lien predates the debtors entitlement to claim homestead status, relying primarily on two Florida Supreme Court cases—Pasco v. Harley, 73 Fla. 819, 75 So. 30 (Fla. 1917) and First Nat. Bank v. Peel, 107 Fla. 413, 145 So. 177 (Fla. 1932). The Siblings argue that their perfected pre-existing judgment lien attached to the Dog Leg Property before the debtors occupied the home with the intent to make it their permanent home. The Siblings recorded their judgment lien by November 13, 2007, at the latest (Plaintiff's Exh. No. 4). The very earliest that Mr. Harle moved into the Dog Leg Property was July 2008, over six months later. Therefore, pursuant to Pasco and Peel, the Siblings argue that their judgment lien takes priority over the debtors' later claim of homestead exemption.

In response, the debtors argue that, in Florida, no judgment can be a lien on homestead property subjecting the property to forced sale unless the judgment stems from one of three limited

---

[8] During the hearing on the Siblings' objection, counsel for the plaintiff mentioned that the debtors also claim the Dog Leg Property as exempt because they own the property as tenants by the entireties. The debtors, however, have never filed any such claim of exemption. As such, this Memorandum Opinion specifically does not address whether the debtors own the Dog Leg Property as tenants by the entireties or what impact that may have in connection with the Siblings' claims.

circumstances detailed in the Florida Constitution. Generally speaking, this is true. See Cannon v. Cannon, 254 B.R. 773, 777-78 (S.D. Fla. 2000) (citing Wilhelm v. Locklar, 46 Fla. 575, 35 So. 6, 6 (1903); Milton v. Milton, 63 Fla. 533, 58 So. 718, 719 (1912) ("Judgments or decrees are liens upon the real estate of the defendants in the county where such judgments or decrees are rendered or recorded as required by the statutes. But no judgment or decree or execution shall be a lien upon homestead exempted property except for [those liens set forth in the Constitution].")). The Florida Constitution provides only three instances where a creditor can force the sale of an exempt homestead: (i) for the payment of taxes and assessments; (ii) for the payment of obligations contracted for the purchase of the home, such as a purchase money mortgage, or obligations for the improvement or repair of the home; and (iii) for payment of obligations contracted for labor performed on the realty, sometimes referred to as a "mechanic's lien." Fla. Const. Art. X, § 4. In this case, the Siblings' judgment lien falls into none of these three categories.

Citing Pasco and Peel, the Siblings argue that pre-existing liens, however, are excepted from Florida's homestead exemption. In Pasco v. Harley, 73 Fla. 819, 75 So. 30 (Fla. 1917), on November 15, 1915, John Pasco, a receiver of a bank, obtained a judgment against James Harley on an unsecured promissory note unrelated to any mortgage or construction work associated with any real property. A levy of execution on Harley's real and personal property issued on December 1, 1915, and a sale was set for January 3, 1916. At the time of the judgment and levy of execution, Harley was neither married nor the head of a family. As such, he was not eligible to claim an exemption in a household as the head of a family, which was required to claim homestead exemption at that time. Harley soon married, however, on December 15, 1915. On December 24, 1915, Harley delivered an affidavit to the sheriff explaining that he now was the head of a family, resided on a portion of the land levied upon, and claimed a homestead exemption therein, precluding the property from being sold.

In <u>Pasco</u>, the Florida Supreme Court specifically determined the priorities between a homeowner's right to a homestead exemption and a creditor's right to enforce a judgment lien[9] impressed upon the property *before* a judgment debtor/homeowner becomes eligible to claim the homestead as exempt. <u>Pasco</u>, 73 Fla. at 822; 75 So. at 32. As such, the Florida Supreme Court ruled on the precise issue raised in this dispute—whether the homeowner/judgment debtor is entitled to claim homestead exemption if the real property already is encumbered by a properly recorded judgment lien—and held that the creditor has a superior lien *vis a vis* the homeowner's homestead exemption. In <u>Pasco</u>, Harley acquired the right to a homestead exemption when he married and became the "head of a family" *after* Pasco's lien attached to the property. Thus, the Florida Supreme Court held that Harley's right to exempt his homestead was "subject to" Pasco's lien, and the creditor was allowed to proceed with the forced sale of the otherwise exempt homestead property.

In so ruling, the Florida Supreme Court explained that "[t]he 'forced sale' forbidden by the Constitution is of 'exempted property,' and not of property that was subject to the vested rights of others at the time the right accrued to the claimant of a homestead exemption." <u>Pasco</u>, 73 Fla. at 827-829, 75 So. at 33-34:

> The Constitution forbids judgment and execution liens only on 'exempted property,' and the property of a person who is not the head of a family is not 'exempted property' under the Constitution. The liens having attached when the property was not exempt, the mere change of the status of the owner of the property to that of 'the head of a family' does not destroy the judgment and execution liens of a bona fide creditor for value any more than such change of status would destroy a mortgage lien . . .
> 
> ***
> 
> The judgment and execution liens constitute an interest in the property; and such interest was not owned by Harley when he became the head of a family entitled to homestead exemptions. Only the interest in the property that is 'owned by the head of a family residing in this state' shall be 'exempt from forced sale.'

---

[9] <u>Pasco v. Harley</u> discussed Section 1600, General Statutes 1906, a predecessor statute to Florida's current statute, contained at Chapter 55.10 governing when a lien becomes a lien on real property.

<u>Id</u>.

Fifteen years after the Florida Supreme Court issued the decision in <u>Pasco</u>, it further elaborated on the homestead exemption issue in <u>First Nat'l. Bank v. Peel</u>, 107 Fla. 413, 145 So. 177 (Fla. 1932), which, like <u>Pasco</u>, and as relevant here, involved the institution of a lawsuit and subsequent entry of a judgment which encumbered property *before* the judgment debtor and his wife either occupied or took any steps toward occupying the property as their homestead. The Court explained that whether or not property could be exempt as homestead depended upon whether or not Peel and his family occupied the property before or after the institution of the lawsuit. If Peel and his family lived on the property *before* the suit was filed to subject the property to judgment the property *would be* exempt; if *after*, it *would not be* exempt "because the decree would establish the rights of the parties as of the date of the institution of the suit." <u>Peel</u>, 107 Fla. at 415-16, 145 So. at 178 (citations omitted). The Court further explained that although "the homestead right may be protected by the homestead claimant at any time after it has once been established, it does not follow that the homestead status may be brought into being at any time to the exclusion of preexisting liens or conveyances." <u>Peel</u>, 107 Fla. at 416, 145 So. at 178. The Court thus held that the judgment became a lien on the property on the date it was rendered and that the "lien could not be canceled by the attempted conversion of the property into a homestead after the lien attached." <u>Peel</u>, 107 Fla. at 417, 145 So. at 179. Further, the Court rejected the judgment debtor's argument that he intended to eventually occupy the property as a homestead; rather, "there must be a manifest intention to immediately occupy it as a homestead." The Court defined manifest to mean "apparent by examination; open; visible; act by which the intention of the owner may be apparent to others, and which will constitute evidence of such intention." <u>Peel</u>, 107 Fla. at 418, 145 So. at 179. In <u>Peel</u>, the manifestation of intent to occupy the property at issue as a homestead was "entirely absent at the date of judgment" and according to the record evidence, did not occur until more than seven months after the judgment was entered. <u>Id</u>.

The rule articulated in Pasco and Peel has not changed since the Florida Supreme Court long ago issued those decisions, and courts continue to recognize and apply the rule. e.g., Bessemer v. Gersten, 381 So.2d 1344, 1347, n.1 (Fla. 1980) ("In general, for a lien to be enforceable against homestead property, its existence must be established as of the time the homestead status was acquired."); In re Cooper, 202 B.R. 319, 322 (Bankr. M.D. Fla. 1995),[10] (citing Bessemer and acknowledging that pre-existing liens are excepted from Florida's homestead exemption) aff'd, 197 B.R. 698 (M.D. Fla. 1996).

Applying the rule set forth by the Florida Supreme Court to this case, the Court finds that the Siblings' judgment lien antedates the debtors' eligibility to claim the Dog Leg Property as their exempt homestead and that, therefore, the debtors' right to claim the homestead exemption for this property is subject to the Siblings' pre-existing lien. Pursuant to Pasco, the Dog Leg Property's subsequent change in status to the debtors' homestead, in December 2008, does not destroy the Siblings' judgment lien which had earlier attached to the property. Pursuant to Peel, a homeowner cannot use a claim of homestead as a sword to extinguish pre-existing liens. In this case, as was the case in Peel, the intent to eventually occupy the property as the homestead is insufficient. Rather, actual occupancy or a manifest intention to immediately occupy the property is required. The Dog Leg Property is subject to the Siblings' judgment lien, and the debtors are not entitled to claim any

---

[10] Cooper arose on a Motion to Avoid Lien pursuant to Bankruptcy Code Section 522(f) which relevantly provides as follows:

> **(f)(1)** Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is--
>
> **(A)**       a judicial lien . . .

11 U.S.C.A. § 522. To date in this case, the debtors have not filed any such motion. However, there is no real time limit for doing so. In re Glover, No. 00-6680, 2001 WL 1825795 *2 (Bankr. M.D. Fla., July 31, 2001) (J. Briskman) ("The Bankruptcy Code and Rules are silent as to any particular time constraints for raising lien avoidance. The majority of courts have held there is no time limit for raising lien avoidance absent prejudice or fraud to creditors.") (citing In re Jacobs, 154 B.R. 359, 361 (Bankr.S.D.Fla.1992) (other internal citations omitted)).


...

homestead exemption. The Court, therefore, will partially sustain the Siblings' objection and hold that, as to the Siblings' judgment, the lien is superior to the debtors' claim of exemption.

Accordingly, the Court partially overrules and partially sustains the Siblings' objection (Doc. No. 17). As to all other creditors, the debtors are entitled to claim the Dog Leg Property as their exempt homestead on the petition date, but, as to the Siblings, their judgment lien is superior to the debtors' claim of homestead exemption. A separate order shall be entered consistent with this Memorandum Opinion simultaneously herewith.

DONE AND ORDERED in Orlando, Florida, on January 13, 2010.

KAREN S. JENNEMANN
United States Bankruptcy Judge

Copies furnished to:

Debtor: Patrick Harle, 800 Dog Leg Trail, Osteen, FL  32764

Debtor: Frances Harle, 800 Dog Leg Trail, Osteen, FL  32764

Debtors' Attorney: Avie Meshbesher Croce, 1301 Bevelle Road, Suite 8, Daytona Beach, FL 32119

Trustee: Marie E. Henkel, 3560 S. Magnolia Avenue, Orlando, FL  32806

U.S. Trustee, 135 W. Central Blvd, Suite 620, Orlando, FL  32801

All Creditors and Interested Parties